STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V. ATLAS BANK OF NELIGH: EMIL FOLDA, RECEIVER, APPELLEE: J. J. MELICK, CLAIMANT, APPELLANT.

FILED JUNE 8, 1926. No. 24231.

1. **Banks and Banking:** GUARANTY FUND: DEPOSITS. Whether a transaction constitutes a deposit, within the meaning of the

depositors' guaranty law, must depend upon the facts and circumstances surrounding the particular transaction.

2. ———: ———: ———. The law will look through all semblances and forms, to ascertain the actual fact whether or not there has been a *bona fide* deposit, and, if not, the depositors' guaranty fund will not protect the transaction, no matter how it may be evidenced.

3. ———: ———: ———. Ordinarily, where a stockholder of a state bank, with knowledge that the bank is insolvent or in an unsafe condition, at the instance and request of the bank officials obtains and places in or to the credit of the bank money, to enable the bank to meet a pressing obligation, and where the money is not placed in or at the command of the bank, for the use, safe-keeping or convenience of the stockholder, in the ordinary and usual course of business, such transaction does not constitute a good-faith deposit, within the meaning of the guaranty fund law, and is not protected by the depositors' guaranty fund.

APPEAL from the district court for Antelope county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Williams & Kryger* and *Gaines, Van Orsdel & Gaines,* for appellant.

*C. M. Skiles, Fred S. Berry, James E. Brittain* and *Lyle E. Jackson, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD, THOMPSON, and EBERLY, JJ., and REDICK, District Judge.

GOOD, J.

In November, 1923, the Atlas State Bank of Neligh, Nebraska, failed, and a receiver was appointed to take charge of and wind up its affairs. A claim, based upon two certificates of deposit for $5,000 each, was filed against the receiver, praying that it be allowed as preferred and adjudged payable out of the depositors' guaranty fund. The trial court found and adjudged that claimant was entitled to have his demand allowed as a general claim, but was not entitled to a preference, and that his claim was not payable out of the depositors' guaranty fund.

The only question for determination is as to whether the transaction, which culminated in the issuance of the certificates of deposit, constitutes a good-faith deposit, or is, in effect, a loan, within the meaning of the depositors' guaranty law.

The Atlas State Bank was organized in 1901, and a few months thereafter J. J. Melick became a stockholder and director of the bank, and so continued until it failed. The bank was prosperous and paid good dividends until about 1919, when it began to have financial difficulties. The bank's financial distress continued and increased until it's failure. It was a continual struggle, for a period of three years, to keep the bank open and running. In 1921, the officers and stockholders procured L. K. Moore, to take charge of and attempt to place the affairs of the bank in a sound condition. In November or December of that year Moore informed Melick and other stockholders and directors that there was more than $200,000 of worthless paper in the bank, and that it was in a precarious condition. In order to procure ready money for the bank, to meet its demands, Melick and other stockholders had indorsed $60,000 of the bank's paper. This was done for the purpose of keeping the bank open. A little later Melick indorsed paper of the bank to the extent of more than $200,000. Melick and other officers then knew that the bank was insolvent, or at least in an unsafe condition. In January, 1922, a draft was drawn on the Atlas State Bank for $20,000, which it was required to meet. Its reserve was then depleted. It did not have the ready money to meet this and other obligations then pressing. Melick and two officers of the bank arranged to raise $30,000 for the purpose of assisting the bank in meeting its pressing demands. As his part of the $30,000, Melick raised $10,000 and placed it in the Stock Yards National Bank, of South Omaha, to the credit of the Atlas State Bank, and for this two certificates of deposit for $5,000 each were issued. These certificates were from time to time renewed. The last renewals are the certificates in controversy.

Section 8033, Comp. St. 1922, provides: "No claim to priority shall be allowed which is based upon any evidence of indebtedness in the hands of or originally issued to any stockholder, officer or employee of such bank, which represents money obtained by such stockholder, officer or employee, from himself or some other person, firm, corporation or bank in lieu of or for the purpose of effecting a loan of funds to such failed bank."

Whether the transaction constitutes a deposit, within the meaning of the depositors' guaranty law, must depend upon the facts and circumstances surrounding the particular transaction. The law will look through all semblances and forms to ascertain the actual fact whether or not there has been a *bona fide* deposit, and, if not, the depositors' guaranty fund will not protect the transaction, no matter how it may be evidenced. Where a stockholder or officer of a state bank, with full knowledge that the bank is insolvent, or in an unsafe condition, at the instance of the bank's officers procures and places therein or to its credit money to enable the bank to meet a pressing demand upon it, and where the money is not placed in the bank for the use and convenience of the depositor, although the form of the transaction may appear as a deposit, it does not, in fact, constitute a deposit, within the meaning of the depositors' guaranty law, and is not protected by the depositors' guaranty fund. *Kidder v. Hall*, 113 Tex. 49; *First Nat. Bank v. Hirning*, 48 S. Dak. 417.

Upon a state of facts similar to those presented by the record in this case, this court, in the recent case of *State v. Farmers State Bank*, 113 Neb. 348, held that, where a stockholder in a state bank borrowed money and placed it to the credit of the bank and for the purpose of keeping up the deposits of the bank, he was not a depositor, within the protection of the depositor's guaranty fund, although the certificate of deposit was issued for the amount and placed to the credit of the bank.

The facts in this case clearly disclose that Melick did not place the money to the credit of the bank as a matter of

convenience or safe-keeping, or for his own use, but that his purpose was to aid the bank in meeting a pressing demand upon it. It was not a deposit in the ordinary and usual course of business. It was done at the instance of the bank's officers and for the purpose of aiding the bank to meet its obligations. Although the transaction was in the form of a deposit, it is not a good-faith deposit, within the meaning of the guaranty law, and is not protected by the depositors' guaranty fund.

Claimant has cited and relies upon a number of cases that are not in point because the depositors were not officers or stockholders of the failed bank. Under the statute above quoted, a stockholder or officer of a state bank occupies a different position, with reference to the bank, than a stranger to it, and his transaction will be more closely scrutinized in determining whether the transaction constitutes a good-faith deposit, within the meaning of the guaranty fund law.

The judgment of the district court is clearly justified by the record and is

AFFIRMED.